IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STERLIN REAVES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-1869 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| JOHN WETZEL, SHIRLEY MOORE- | ) | |
| SMEAL, and STEVE GLUNT, | ) | Re: ECF No. 46 |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Plaintiff Sterlin Reaves ("Plaintiff"), is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") and is currently incarcerated at the State Correctional Institution ("SCI") at Pine Grove. Plaintiff has presented a civil rights complaint alleging that Defendants violated his rights provided by the Eighth and Fourteenth Amendments to the United States Constitution by keeping him on the Restricted Release List ("RRL"), and thus in solitary confinement, for over fourteen years.

Presently before the Court is a Motion to Compel filed by Plaintiff in which he asks the Court to order Defendants to answer fully the interrogatories submitted by Plaintiff; to produce the documents requested in Plaintiff's First Request for Production of Documents; to produce the documents requested by Plaintiff in his Second Request for Production of Documents; to provide disclosures under Fed. R. Civ. P. 26 (a)(2); and to allow Plaintiff to take non-stenographic audiotaped depositions of each Defendant. ECF No. 46. For the reasons that follow, the Motion is granted in part and denied in part.

The scope of discovery is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the Court's discretion and judgment.  It has long been held that decisions relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court.  Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  A party moving to compel discovery bears the initial burden of proving the relevance of the requested information.  Morrison v. Phila. Hous. Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001).  Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  In re Urethane Antitrust Litig., 261 F.R.D. 570, 573 (D. Kan. 2009).

Here, with respect to the interrogatories submitted by Plaintiff, Defendants have represented that they responded to the interrogatories after Plaintiff filed the instant Motion to Compel.  Plaintiff's Motion in this regard therefore is therefore moot and thus denied.  ECF No. 58 at 3.

With respect to the documents requested by Plaintiff in his First Request for the

Production of Documents, it appears that Defendants have already produced certain documents,

have subsequently agreed that they will provide the requested documents, or there is otherwise

no longer a dispute (Request Nos. 1, 3, 6-9, 16, 18-19).  ECF No. 50 at 3-5; ECF No. 58 at 5-10

In addition, as a compromise, Defendants have agreed to make certain other documents available

to Plaintiff for his review in a redacted form (Request Nos. 2, 5, 14-15).  Id.  Therefore, the only

requests remaining at issue are Requests Nos. 4, 10-13 and 17.

In Request No. 4, Plaintiff seeks "[t]he integrated case summary-classification," which

Plaintiff argues will reveal to him whether there are any "separations filed against him

preventing his release to a specific institution."  ECF No. 58-1 at 1, ¶ 4; ECF No. 50 at 3, ¶ 4.

The Court, however, fails to see what relevance information regarding what institution Plaintiff

can be housed in has to his claim challenging his continued status on the RRL.  Moreover, as

argued by Defendants, the information that Plaintiff seeks is not only privileged and confidential

but contains highly sensitive security information and/or psychological information and

documents containing frank assessments by staff as to Plaintiff's status and that disclosure of this

information to Plaintiff could enable him to manipulate staff and programming.  Defendants also

contend that disclosing the nature of separations, whether from other staff and/or inmates, and

the identities of those persons, could present a serious safety risk to staff.  Under these

circumstances, Plaintiff's Motion as to Document Request No. 4 is denied.

In Requests Nos. 10 and 11, Plaintiff seeks a photocopy of the pictures taken of the

contraband confiscated from his cell in July of 2005 and the conclusions drawn by the security

captain following the ensuing investigation.  ECF No. 58-1 at 2, ¶¶ 10, 11.  Again, the Court fails

to see the relevance to Plaintiff's claims in this case.  In addition, Defendants have represented

that the photos cannot be located at this time (and likely were not retained) and that one of the items confiscated was a hand drawn schematic of SCI Greene, which inmates are not permitted to possess. Moreover, the photos, as well as the security investigations/conclusions, clearly raise confidentiality and security issues. Accordingly, Plaintiff's Motion to Compel in this regard is also denied.

In Request No. 12, Plaintiff seeks his psychological evaluations and conclusions from 2002 to 2017. Plaintiff contends that these records are necessary in order to show that he has done nothing over the past 15 years to justify his continued status on the RRL. ECF No. 58-1 at 2, ¶ 12; ECF No. 50 at 4, ¶ 12, at 2, ¶ A(1). Defendants have objected to this request "because it seeks information that is privileged and confidential, with highly sensitive documents containing frank assessments by staff as to plaintiff's psychological condition, status and treatment," and that "[d]isclosure of this information to the plaintiff (an inmate) could enable him to manipulate staff and programming, in addition to presenting a security or safety risk to staff." ECF No. 58 at 8. The Court not only agrees with Defendants but Plaintiff's psychological evaluations are not records of Plaintiff's conduct and thus are seemingly irrelevant. Plaintiff's Motion with respect to Request No. 12 therefore is denied.

Plaintiff seeks the custodial status and identity of all similarly situated inmates accused of and/or found guilty of assaulting female staff members in Request No. 13. ECF No. 58-1 at 2, ¶ 13. Plaintiff's request is denied. Not only is the request overly broad and seemingly irrelevant to Plaintiff's claims, but the information sought, which relates to other inmates, is clearly privileged and confidential. Furthermore, counsel for Defendants has represented that the DOC does not maintain records in a fashion that would enable them to extract the information Plaintiff seeks.

In Request No. 17, Plaintiff asks the Court to compel Defendants to provide him with a copy of the last two most updated "06.05.01 administration of Security Level 5 Housing Units." ECF No. 58-1 at 2, ¶ 17. Plaintiff clearly seeks privileged and highly confidential information that would pose an obvious security/safety risk to inmates, staff, and/or the institution. It is also unclear to the Court how the policies and procedures relative to Security Level 5 are relevant to Plaintiff's claims regarding his continued status on the RRL. Plaintiff's Motion with respect to Request No. 17 therefore is denied.

In Plaintiff's Second Request for Production of Documents he seeks: 1) his DC-15 file from 2002 to 2017, which appears to be his entire prison file; 2) his DC-17X files from 2002 to 2017, which memorialize Plaintiff's daily activities such as acceptance of meals, exercise and showers; and 3) a copy of the initial request to place Plaintiff on the RRL so as to ascertain who issued it and the rationale behind the decision. ECF No. 58-2 at 1. Plaintiff maintains that he needs these files in order to prove that he has done nothing to justify his continued placement on the RRL.

With respect to Plaintiff's DC-15 file, which Defendants contend is almost 9 volumes, ECF No. 58 at 4, it appears to include confidential classification information, information on separations from staff and other inmates, parole summaries, victim and court information/letters, and pre-sentence investigation material, transfer petitions, CHRIA information, vote sheets, as well as psychological information and testing/diagnostic data. As argued by Defendants, it appears clear that divulging such confidential and sensitive information would not only create a security risk but could jeopardize the safety of staff, victims and others. In addition, to the extent the file contains non-confidential information such as conviction and parole information, property inventories, grievances and misconducts (most of which Plaintiff would already have),

Plaintiff has failed to establish the relevance to his claims. Defendants have nevertheless agreed to provide copies of any relevant documents that Plaintiff can specifically identify. As such, Plaintiff's Motion to Compel in this regard is denied.

Plaintiff's DC-17X's also appear to be voluminous and contain little, if any, relevant information. Indeed, as reflected in the sample DC-17X form submitted by Defendants, the forms largely reflect Plaintiff's acceptance or rejection of meals, exercise, medications and the like, which are seemingly irrelevant to Plaintiff's claims. ECF No. 58-4. Further, Defendants contend that staff members do not make substantive commentary on these forms, and often they are not even completed and may not be retained. Defendants nevertheless have agreed to provide Plaintiff with copies of the DC-17X forms that have been retained for the relevant time frame, *i.e*, two years prior to the filing of the Complaint. Under these circumstances, Plaintiff's Motion is denied with respect to his DC-17X forms.

Insofar as Plaintiff has asked for the initial RRL request showing who issued it and the rationale, Defendants have represented that the DOC has not been able to locate this particular documentation. See Smith v. Donate, No. 4:10-2133, 2011 WL 5593160, at *4 (M.D. Pa. Nov. 17, 2011) ("the court cannot compel the production of things that do not exist; nor can the Court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary"). In addition, they have indicated that the decision to place Plaintiff on the RRL was very likely made by then-Secretary Beard and that there is no doubt that the reason was due to Plaintiff's violent assault on a female staff member in 2000, which mimicked his conviction crime. Plaintiff has also failed to establish the relevance of the information as he is not challenging his initial placement on the RRL but rather his continued RRL status and the decision not to remove from the list in 2014 and 2015. Under these circumstances, Plaintiff's

Motion to Compel with respect to his Second Request for Production of Document is denied.

Plaintiff also asks in his Motion that Defendants be required to disclose the identity of expert witnesses in compliance with Fed. R. Civ. P. 26(a) (2). Plaintiff, however, has not developed any argument relative to the issue in his supporting brief, which was filed almost a week after the Motion was filed, and thus it is unclear to the Court whether Plaintiff wishes to pursue the matter at this juncture.[1] It nevertheless appears that Plaintiff's request is premature. See Rule 26 (a)(2)(D) ("*Time to Disclose Expert Testimony*").

Finally, with respect to Plaintiff's request that he be permitted to take non-stenographic audiotaped depositions of each Defendant, the Motion will be granted in part and denied in part. Although Defendants have argued that audiotaped, non-stenographic depositions "is not something contemplated by the rules," Fed. R. Civ. P. 30(b)(3)(A) provides that:

> **(3) *Method of Recording.***
>
> **(A)** *Method Stated in the Notice.* The party who notices the deposition must state in the notice the method for recording the testimony. Unless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means. The noticing party bears the recording costs. Any party may arrange to transcribe a deposition.

The rules therefore do contemplate the taking of depositions by non-stenographic means, *i.e.*, by audio or audiovisual means. Moreover, there does not appear to be any provision that excludes *pro se* inmates from taking depositions. Thus, to the extent Plaintiff wishes to depose the Defendants, he is entitled to do so.

Plaintiff, however, may not circumvent the portion of the rule that requires him to bear the recording costs and any costs incurred copying the tapes and/or having them transcribed.

---

[1] The Court notes here that upon receiving Plaintiff's discovery requests in May of 2017, Defendants responded that Rule 26 did not apply to pro se inmate litigation. ECF No. 46-3. However, review of the Rule indicates that pro se inmate litigation is only exempt from Rule 26(a)(1), which pertains to *initial* disclosures, and not Rule 26(a)(2) which addresses disclosure of expert testimony.

Although Plaintiff has been granted *in forma pauperis* status, that designation only relieves Plaintiff of having to prepay the filing fee required to initiate this suit. 28 U.S.C. § 1915 (a)(2). It does not relieve Plaintiff of having to pay the filing fee,[2] or other costs he incurs during the course of the litigation. 28 U.S.C. § 1915 (b)(1).

Indeed, it is well established that, although "[a] court should consider a prisoner-litigant's inability to gather facts relevant to the proof of his claim and should be sensitive to his discovery difficulties . . . [*p]ro se* litigants must follow the same rules of procedure that govern other litigants, including the discovery rules" and the costs associated with conducting discovery. Kramer v. City of New Kensington, No. 13-606, 2016 WL 406284, at *2 (W.D. Pa. Feb. 3, 2016) (internal quotations and citations omitted). As the United States Court of Appeals for the Third Circuit has observed: "[t]here is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statue authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant." Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993). See Cotton v. Campbell, No. 14-596, 2016 WL 2742386, at *4 (D. Del. May 10, 2016) ("Plaintiff is responsible for his own costs in prosecuting his case, including the costs of discovery and assembling the facts"); Kramer v. City of New Kensington, 2016 WL 406284, at *2 ("[i]t is not incumbent upon the Court, or the Defendants, to assume responsibility, logistically or financially for the depositions Plaintiff wishes to conduct"); Ballard v. Williams, No. 3:10-1456, 2013 WL 5291109, at *4 (M.D. Pa. Sept. 18, 2013) (finding that indigent plaintiff is responsible for payment of own discovery expenses); Wallace v. Bledsoe, No. 1:10-0225, 2010 WL 1565571, at *5 (M.D. Pa. Mar. 16, 2010), *Report and Recommendation adopted*, No. 1:10-225, 2010 WL

---

[2] In fact, Plaintiff has already made a number of partial payments to satisfy his obligation in this regard. ECF Nos. 19, 24, 28, 32, 44, 45, 59.

1565578 (M.D. Pa. Apr. 19, 2010) ("[t]he law is well-settled that *pro se* inmates must pay for the expenses involved in their civil actions . . . . even if the inmate Plaintiff is proceeding *in forma pauperis*"). Thus, it is Plaintiff's responsibility, not that of the Court or Defendants, to notice and/or for the depositions and to pay all fees associated with them, including the cost of copying tapes and preparing any deposition transcripts. Accordingly, to the extent that Plaintiff has the financial ability to conduct the depositions of Defendants, the Motion is granted.[3]

BY THE COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: August 23, 2017

cc:     Sterlin Reaves
        DX-5999
        SCI Pine Grove
        189 Fyock Road
        Indiana, PA 15701

        All counsel of record via CM/ECF

---

[3] Because of the expense of oral depositions and logistical difficulties presented to an inmate proceeding *pro se*, *pro se* inmates typically seek discovery through depositions by written questions pursuant to Rule 31 of the Federal Rules of Civil Procedure.